```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

F & W LAWN CARE AND
LANDSCAPING, INC., an
Illinois corporation,

       Plaintiff and Counter
       Defendant,

v.                                      Case No: 2:23-cv-549-JES-KCD

ROBERT A. COZART,

       Defendant and Counter
       Claimant.

## OPINION AND ORDER

This matter comes before the Court on Defendant Robert A. Cozart's ("Robert" or "Defendant") Motion to Dismiss (Doc. #46) filed on September 27, 2024. Plaintiff F & W Lawn Care & Landscaping, Inc. ("F&W" or "Plaintiff") filed a Response in Opposition (Doc. #47) on October 8, 2024. Defendant filed a Reply (Doc. #51) with leave of the Court on October 29, 2024. Plaintiff filed a Sur-Reply (Doc. #58) with leave of Court on November 7, 2024. Defendant seeks to have Count I of Plaintiff's four-count Complaint dismissed for failure to state a claim.

For the reasons set forth below, the motion is **DENIED**.

**I.**

The relevant material facts alleged in the Complaint (Doc. # 1) are summarized as follows: F&W is a family-owned Illinois

landscaping corporation. Tina Cozart ("Tina"), Defendant's ex-wife, worked as F&W's office manager from 2006 until 2015. Beginning in 2008, Tina engaged in a scheme of fraudulently using F&W's credit cards for her own personal gain, accumulating over $1.5 million in charges and cash advances. Once the scheme was uncovered in 2015, Tina's employment with F&W was terminated.

A few months later, Robert was laid off from his job. Robert soon secured another in Alameda County, California, where Tina and Robert moved sometime between late 2015 and early 2016.

In August 2016, federal prosecutors in Illinois filed a twelve-count criminal indictment against Tina, charging her with fraud and tax violations. Robert was not charged. In May 2017, while Tina's criminal prosecution was pending, F&W filed a civil suit against Tina and Robert in state court in McLean County, Illinois (the "Illinois Case").

In June 2017, Tina pleaded guilty to a fraud charge and a tax charge. In December 2017, Tina was sentenced to 42 months imprisonment plus three years of supervised release and was ordered to pay F&W just over $1.4 million in restitution. In February 2018, Tina began serving her prison sentence at the Dublin Correctional Facility in California.

At the time of Tina's sentencing, Tina and Robert had been living in California for almost two years. Under California community property law, Tina had a 50% interest in all their

assets, notwithstanding any titled ownership in Robert's name. F&W alleges that immediately after Tina was sentenced, she and Robert embarked on a scheme to place their combined assets beyond F&W's reach. The alleged scheme had many parts, but the most important component was obtaining a sham divorce that would make Robert the sole owner of all their community property.

In July 2018, Robert filed a *pro se* petition for divorce in state court in Alameda County, California (the "California Divorce Case").

Tina was released to a halfway house in California in August 2019, after serving eighteen months.

On September 20, 2019, Tina and Robert executed a marital settlement agreement ("MSA"). Pursuant to the MSA, Tina assigned her entire 50% interest in certain "Identified Assets" to Robert (the "MSA Transfer"). The Identified Assets consisted of: (a) all personal property in Robert's possession and control, including furniture, furnishings, jewelry, and other items; (b) a 2010 Jeep Wrangler; (c) a State Farm life insurance policy; (d) a Charles Schwab IRA account; and (e) a Tesla 401(k) account. In exchange, Tina received the personal property in her possession. F&W alleges that through the MSA Transfer, Robert received roughly $650,000 in assets, while Tina received $500 in assets.

In February 2020 the judge in the California Divorce Case entered a judgment of dissolution, which incorporated the MSA.

After the marriage was dissolved, Robert left California and eventually took up residency in Florida. While the date Robert became a Florida resident is disputed, it was clearly after the February 2020 resolution of the California Divorce Case.

In October 2020, F&W obtained a judgment for $1.467 million against Tina in the Illinois Case. Apparently three counts remain pending against Robert in that case, but the Illinois state court dismissed a fraudulent transfer claim against him for lack of personal jurisdiction. Accordingly, F&W filed the instant federal case, alleging in Count I that the MSA Transfer to Robert was a voidable transfer under California law.

Robert now moves to dismiss Count I for failure to state a claim upon which relief may be granted.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir.

2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, a district court may consider the factual allegations in the complaint and exhibits attached to the complaint. MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (citation omitted); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). A court may also consider evidence outside the complaint if it satisfies the incorporation-by-reference doctrine or is properly subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Swinford v. Santos, 121 F.4th 179, 187 (11th Cir. 2024). Under the incorporation-by-reference doctrine, extrinsic material referenced in the operative complaint and attached to a motion to dismiss may be considered if it is central to the plaintiff's claim and its authenticity is not challenged. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Jackson v. City of Atlanta, Georgia, 97 F.4th 1343, 1350 (11th Cir. 2024). A court may also consider exhibits not mentioned in nor attached to a complaint under the same standard. Maxcess, Inc. v. Lucent Techs., Inc.,

433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

A court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, a court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

F&W's current federal Complaint sets out four counts against Robert, but only Count I is the subject of this motion to dismiss. Count I sets forth a claim for "AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS: The MSA Transfer (CA CIVIL §3439 et seq. and California Common Law)." (Doc. #1, p. 30.) Count I alleges that Tina effected the MSA Transfer to hinder, delay and defraud her creditors, including F&W, and that she was insolvent at the time of the

transfer. F&W alleges that the MSA Transfer was both actually and constructively fraudulent. F&W further asserts that it is entitled to void the MSA Transfer to Robert under the California Uniform Voidable Transfer Act and to recover the transfer's value, *i.e.* 50% of the value of the Identified Assets. F&W also asserts that under California common law, it is entitled to the same relief, as well as to compensatory and punitive damages. (Doc. #1, ¶¶ 118-128.)

### A. California Uniform Voidable Transactions Act

Since Count I purports to set forth a claim under California law, the Court looks to California law for the elements of the cause of action.

California has a long history of allowing creditors to bring an action in equity to reach assets that a debtor has conveyed to a third party. California has also had various statutory frameworks addressing voidable transfers. The California Uniform Fraudulent Transfer Act ("UFTA") was enacted in 1986, and with minor changes, was retitled in 2016 as the Uniform Voidable Transactions Act ("UVTA"). See MACH-1 RSMH, LLC v. Darras, 324 Cal. Rptr. 3d 160, 167–68 (Ct. App. 2024).

As it applies to an existing creditor such as F&W, a transfer may be voidable either because of actual fraud or constructive fraud. Mejia v. Reed, 74 P.3d 166, 168 (Cal. 2003). A transfer of an asset by a debtor is voidable if the debtor made the transfer

"[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). The UVTA lists eleven non-exclusive characteristics or "badges of fraud" to help determine a debtor's actual intent. Id. § 3439.04(b).

A transfer of an asset by a debtor may also be voidable if there was constructive fraud. A transfer is constructively fraudulent under the UVTA where a debtor makes the transfer

> [w]ithout receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor either: (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[; or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Id. § 3439.04(a)(2). Additionally, a transfer is constructively fraudulent when a debtor makes a transfer "without receiving a reasonably equivalent value in exchange . . . and the debtor was insolvent at that time or . . . became insolvent as a result of the transfer . . . ." Id. § 3439.05(a).

A successful creditor may obtain a variety of statutory remedies, including voiding the transfer of assets, attachment of assets, and an array of equitable relief. Id. § 3439.07(a)-(d). A creditor may also supplement the UVTA's remedies with any others available at law or in equity. Id. § 3439.12. This includes a common law claim for fraudulent transfer, which allows recovery of consequential and punitive damages. Berger v. Varum, 248 Cal.

Rptr. 3d 51 (Ct. App. 2019).

Of particular relevance here, for a fraudulent transfer to take place, there must be a "transfer" of an "asset" as defined in the UVTA. Fid. Nat'l Title Ins. Co. v. Schroeder, 101 Cal. Rptr. 3d 854, 858 (Ct. App. 2009).[1]

"Transfer" is broadly defined under the UVTA as "every mode . . . of disposing of or parting with an asset or an interest in an asset . . . ." Cal. Civ. Code § 3439.01(m). The California Supreme Court has noted that "[o]n its face, the U[V]TA applies to all transfers" and has concluded "that when a couple enters into a marital settlement agreement to divide their property in a dissolution action, that agreement can be challenged as an avoidable transaction under the UVTA." Bijan Boutiques, LLC v. Isong, 324 Cal. Rptr. 3d 390, 395 (Ct. App. 2024) (citing Mejia, 74 P.3d at 170). It is clear that the MSA Transfer between Tina and Robert was a "transfer" within the UVTA's meaning.

"[A]sset" is broadly defined under the UVTA to mean the "property of a debtor," but that definition contains two relevant exceptions. An asset does not include property (1) "to the extent

---

[1] In addition, a potentially voidable transfer may be challenged only by one who is injured by the transfer. Schroeder, 101 Cal. Rptr. 3d at 862 ("injury-in-fact is an essential element of a claim under the U[V]TA"). "It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.'" Id. at 859. This injury requirement is built into the UVTA's express terms. Id. at 862.

it is encumbered by a valid lien," or (2) "to the extent it is generally exempt under nonbankruptcy law." Cal. Civ. Code § 3439.01(a). In short, there can be no voidable transfer if a creditor could not have reached an asset in the first place.

### B. Robert's Ground For Dismissal

Robert's motion to dismiss argues that the Identified Assets are exempt under California law and therefore cannot be the subject of an UVTA action. (Doc. #46, pp. 1-2.) Relying solely on California law, his motion asserts that each Identifiable Asset is exempt from F&W's reach either completely or partially. (Id. at 6-7.) In particular, Robert asserts that California law exempts the IRA and 401(k) "retirement" accounts, which form the "lion's share" of the alleged voidable transfer. (Id. at 8.) In a footnote, Robert avers that the result would be no different under the laws of Florida or Illinois. (Id. at 9 n.1.) Since "[e]xempt property is categorically excluded from the definition of an asset that can be the subject of a fraudulent transfer action," Robert seeks a dismissal with prejudice. (Id. at 9.)

Not surprisingly, F&W opposes the motion. (Doc. #47.) F&W asserts that while the Court will eventually need to determine whether California or Florida exemption laws apply, now is not the proper time. Rather, F&W asserts that the motion must be denied because Robert has included multiple facts outside the four corners of the Complaint that cannot be considered by the Court. (Doc.

#47, pp. 1-2.) F&W argues further that even if those facts were considered, the motion would fail because Robert's view of California exemption law is simply wrong as to the alleged retirement funds, and the allegations in the Complaint do not bring either of the two major assets within the actual California exemption. (Id. at 2-3, 12-16.)

\*   \*   \*   \*   \*

Under California law, a transfer of property which is fully exempt cannot be voided since the creditor could never have reached that property. A transfer of property which is exempt up to a certain dollar limit is voidable only if the debt exceeds the exempted amount, and then only to the amount in excess of the exemption. California law also recognizes, however, "that all exemptions are subject to exceptions." Schroeder, 101 Cal. Rptr. 3d 854, 862 n.7 (Ct. App. 2009) (citing West's Ann. Cal. Civ. Code § 3439.01, legislative committee's comments to 1986 Addition).

The Complaint does not provide a basis to determine which, if any, of the Identified Assets are exempt or the amount of the applicable exemptions. Nothing else that the Court may properly consider establishes that all portions of all Identified Assets cannot be an "asset" within the UVTA's meaning. Therefore, applying California law, the motion to dismiss is due to be denied.

**IV.**

In his Reply Brief, (Doc. #51), Robert argues for the first

- 11 -

time that Florida law, not California law, determines whether the assets are exempt. This is so, he asserts, because he is and was a Florida resident when this federal case was filed and during prior "iterations" of the Illinois Case. Robert asserts that he "made a legal mistake in arguing that California law defined [the] exempt property." (Id. at 3.) He now argues that the IRA and 401(k) accounts and the State Farm life insurance policy are fully exempt, without limitations, under Florida law. (Id. at 1-2, 4.) Thus, Robert argues, the fraudulent transfer claim is barred under the rule that exempt property cannot be the subject of a fraudulent transfer. (Id. at 2, 4.) Without the retirement accounts and the life insurance policy, Robert argues further, the value of the remaining Identified Assets falls below the $75,000 jurisdictional threshold. (Id. at 4.)[2]

### A. "Governing Law" Under California UVTA

The UVTA contains a section describing the "governing law" for voidable transfer claims. This section provides that "[a] claim . . . is governed by the local law of the jurisdiction [where] the debtor is located when the transfer is made . . . ." Cal. Civ. Code § 3439.10(b). An individual debtor's location is determined by their "principal residence." Id. at § 3439.10(a)(1).

---

[2] This argument is a non-starter. Even if the value of the claim in Count I were reduced to near zero, the Court would retain jurisdiction since the alleged values of the claims in Counts II-IV suffice under 28 U.S.C. § 1332.

The time that a "transfer is made" depends on the nature of the item being transferred. Id. § 3439.06(a)-(d).

In this case the debtor is Tina, and the transfer was made no later than when the California court incorporated the MSA into the divorce judgment on or about September 20, 2019. (Doc. #1, ¶ 58.) The Complaint alleges that at that time, Tina's principal residence was in California. Thus, California law would direct that California laws of exemption apply in this case.

### B.  Choice-of-Law Principles

Robert's belated argument requires the Court to at least begin assessing the choice-of-law issue(s) in this case. Unless federal constitutional or statutory law provides otherwise, Travelers Prop. Cas. Co. of Am. v. Talcon Group LLC, 88 F.4th 1371, 1377 n.4 (11th Cir. 2023), a federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Calderon v. Sixt Rent a Car, LLC, 114 F.4th 1190, 1200 (11th Cir. 2024).

The question of which state's substantive law applies is a question of law. American Family Life Assur. Co. v. United States Fire Co., 885 F.2d 826, 830 (11th Cir. 1989); Schippers v. United States, 715 F.3d 879, 888 (11th Cir. 2013). A district court may determine the governing law at the dismissal stage of the proceedings. Sun Life Assurance Co. of Canada v. Imperial Premium

Fin., LLC, 904 F.3d 1197, 1209 (11th Cir. 2018). F&W has invoked diversity jurisdiction, this Court sits within Florida, and no federal provisions preclude the Court's application of Florida choice-of-law rules.

Under Florida law, a court need not resolve a choice-of-law dispute if there is a "false conflict," *i.e.*, if the laws of different, interested states point to the same outcome on an issue. In re January 2021 Short Squeeze Trading Litig., 76 F.4th 1335, 1346 (11th Cir. 2023). If there is a conflict, "the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc. Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." Grupo Televisa, S.A. v. Telemundo Communications Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007).

A "court makes a separate choice of law determination with respect to each particular issue under consideration." Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). "[D]ifferent substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ." Foster v. United States, 768 F.2d 1278, 1281 (11th Cir. 1985).

Florida resolves choice-of-law questions involving torts through the "most significant relationship" test of the

Restatement (Second) of Conflict of Laws. Grupo Televisa, 485 F.3d at 1240, citing Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980). For choice-of-law questions in contract cases, Florida applies the rule of *lex loci contractus*. Calderon v. Sixt Rent a Car, LLC, 114 F.4th 1190, 1200 (11th Cir. 2024) (citing Goodman v. Olsen, 305 So. 2d 753, 755 (Fla. 1974)).

**(1) Issue in Dispute**

The motion to dismiss addresses only F&W's claim challenging the MSA Transfer as a voidable transfer. The Court must determine whether the exemption laws of California or Florida apply in order to assess whether the Complaint states a claim upon which relief may be granted. In other words, are the elements of this cause of action determined by the law of the jurisdiction where the transferee and transferor resided and where the transfer occurred or by the law of the jurisdiction to which the transferee thereafter relocated?

**(2) Actual Conflict**

The parties do not dispute the existence of an actual conflict between the laws of California and Florida on this issue. The laws of both states differ on the applicability and extent of many relevant exemptions.[3] Thus, there is an actual conflict of laws

---

[3] For example, as to the cash value of an insurance policy, California law exempts $13,975 for each spouse, Cal. Code Civ. P. § 704.100, whereas Florida law exempts the entire amount, Fla. Stat. § 222.14. As to a vehicle, California law exempts up to

on the issue now before the Court.

**(3)   Characterization of Claim**

While it seems intuitive that a fraudulent transfer claim would sound in tort, that has not been the experience in Florida. Brown v. Nova Info. Sys., Inc., 903 So. 2d 968, 969 (Fla. 5th DCA 2005) (holding that conspiracy to violate FUFTA is not a "tort giving rise to long-arm jurisdiction," and noting that fraudulent transfers have been held not to be "tort[s] for purposes of establishing personal jurisdiction"); Clement v. Lipson, 999 So. 2d 1072, 1076 (Fla. 5th DCA 2008) (same); Edwards v. Airline Support Group, Inc., 138 So. 3d 1209, 1211 (Fla. 4th DCA 2014) (same). The Court therefore applies Florida choice-of-law principles for both contracts and torts, which ultimately leads to the same result.

**C.  Application of Florida Choice-of-Law Principles**

Robert's only basis to assert that Florida law governs the definition of exempt property is that he was a resident of Florida when (1) the instant federal suit was filed against him, and (2) the prior fraudulent transfer claim was brought against him in the Illinois Case. The latter argument is demonstrably wrong. Robert

---

$7,500, Cal. Code Civ. P. § 704.010, whereas Florida law only exempts $5,000, Fla. Stat. § 222.25(1). As to retirement accounts, Robert concedes that California provides a "qualified" exemption but argues that Florida provides an "unlimited" exemption. (Doc. #51, p. 5 (citing Fla. Stat. § 222.21(2)(a)).

and Tina were residents of California when the complaint in the Illinois Case was filed in May 2017 and amended in April 2019, (Doc. #1, ¶ 52); they established residency in Florida no earlier than 2020. Robert was a resident of Florida when this federal lawsuit was filed in 2023, and while that may be important to some issues, it is not significant to the issue presently before the Court.

The exemptions at issue belong to Tina, the transferor, not Robert, the transferee. The transfer was "made" in California, regardless of whether it occurred when the MSA was executed on September 20, 2019, or incorporated into the dissolution judgment on February 26, 2020. Nothing that Robert did thereafter can affect Tina's exemptions. Nothing in the Complaint or the arguments of Robert's counsel suggests that Tina's exemptions are defined by Florida law. But even when focusing solely on Robert's conduct, regardless of whether Florida choice-of-law rules for contract or tort actions are applied, the extensive contacts with California make clear that California law governs the present issue.

The MSA was negotiated, executed, and performed in California. Tina and Robert were residents of California before and during the negotiation and execution of the MSA. The place where the conduct causing injury to F&W took place was California, where the MSA Transfer occurred. California has a paramount

interest here, as Tina and Robert utilized its state court system to initiate and further the allegedly voidable transfer "through [the] MSA," and California recognizes that such "transfer[s] . . . can be avoided."  In re Beverly, 374 B.R. 221, 233 (B.A.P. 9th Cir. 2007), aff'd in relevant part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).  That a transferee moves to another state after a transfer occurs can neither enlarge nor diminish the scope of an exemption.

As discussed above, applying California law, as directed by Florida choice-of-law principles, results in a finding that the Complaint plausibly states a cause of action.

Accordingly, it is now

**ORDERED:**

Defendant Robert A. Cozart's Motion to Dismiss (Doc. #46) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this  23rd  day of December 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record