```
           UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF FLORIDA
               FORT MYERS DIVISION
```

F & W LAWN CARE AND
LANDSCAPING, INC., an
Illinois corporation,

        Plaintiff and Counter
        Defendant,

v.                            Case No:  2:23-cv-549-JES-KCD

ROBERT A. COZART,

        Defendant and Counter
        Claimant.

_____

**OPINION AND ORDER**

This matter comes before the Court on the Motion for Judgment on the Pleadings (Doc. #75) filed by Plaintiff F & W Lawn Care and Landscaping, Inc. ("Plaintiff" or "F&W") concerning the Amended Counterclaim (Doc. #65) of Defendant Robert A. Cozart ("Defendant" or "Robert"). Defendant filed a Response in Opposition (Doc. #81.)

For the reasons set forth below, the motion is **GRANTED**.

**I.[1]**

F&W has sued Robert, the ex-husband of its former employee, Tina Cozart ("Tina"). Between 2008 and 2015, Tina defrauded F&W of over $1.5 million, and was charged by the United States with twelve criminal counts. Robert was not charged. Tina pled guilty

---

[1] The allegations and procedural history of this case are detailed in a prior opinion (Doc. #61). These are adopted but not repeated here.

and received a 42-month sentence of imprisonment. The U.S. District Court for the Central District of Illinois also ordered Tina to pay F&W over $1.1 million in restitution. Additionally, F&W obtained a civil judgment for $1.467 million against Tina in an Illinois state court. Three civil counts were pending against Robert in that case but have reportedly since been dismissed. (Doc. #81, ¶ 6.)

F&W alleges that Tina and Robert have engaged in a scheme to conceal Tina's assets, which included obtaining a sham divorce to make Robert the sole owner of their community property. During the alleged asset-concealment scheme, Robert moved to Florida. In the instant federal action, F&W seeks to avoid various alleged fraudulent transfers that Tina made to Robert.

In October 2023, the United States, Robert, and F&W signed a Memorandum of Understanding ("MOU"). The MOU's purpose was purportedly to guide discussions that could lead to a resolution of the Illinois state court claims brought against Robert by F&W, as well as the federal claims brought against Robert by the U.S. Attorneys for the Central and Southern Districts of Illinois.

Returning to this case, Robert's Amended Counterclaim quotes liberally from that MOU, which he has filed in its entirety, unsealed and unredacted, on the Court's docket (Doc. #25, pp. 12-15):

[T]he Parties agreed that it was their 'mutual desire to

> pursue a global resolution of a set of legal claims' through the offices of a mediator and outlined a procedure for effectuating resolution. Attached to the MOU, the Parties included a pre-approved 'Global Settlement Agreement' in which [they] agreed to all essential settlement terms except the amount of the settlement. Also attached to the MOU, the Parties included pre-approved stipulations to dismiss the federal court and state court litigation. The MOU further provided that 'the parties agree to mediate their claims in good faith during a settlement conference before Magistrate Judge Jonathan E. Hawley of the U.S. District Court for the Central District of Illinois.' [quoting MOU, p. 1]. F&W separately repeated its 'good faith' contractual promise: 'F&W does not anticipate being a party to the litigation in the U.S. District Court pursuant to this agreement. F&W, however, agrees to participate, indirectly through its interface with [AUSA] Hanna, in the mediation described in this memorandum in good faith as if it were a party to such case.' [quoting MOU, p. 3].

(Doc. #65, p. 52.) Robert has alleged in the Amended Counterclaim that F&W violated the agreement to "participate" in the ensuing discussions in "good faith." (Id. at 52-53.) He has alleged that "[d]uring the negotiations"

> F&W Lawn Care advised Magistrate Judge Hawley, through AUSA Hanna, that F&W Lawn Care would agree to settle if Cozart would offer a certain stated amount and provide a sworn affidavit as to the total value of his assets. In response, Cozart did just that: Cozart offered the Government that same amount F&W requested and a sworn affidavit accurately listing and providing the total value of his assets. Nonetheless, and despite the Government indicating its own agreement to settlement, F&W Lawn Care contended that Cozart had previously misrepresented his assets by claiming only one IRA whereas during the negotiations he disclosed two IRAs. As a result, F&W Lawn Care then withdrew its agreement, which led to the collapse of the negotiations to effectuate a global resolution.

(Id. at 53.) Robert has also asserted that F&W's statement during

- 3 -

negotiations before U.S. Magistrate Judge Hawley — that Robert misrepresented his assets — was "pretextual, erroneous, [and] and asserted in bad faith." (Id.)

Robert has further alleged that F&W knew that its assertion was pretextual, erroneous, and asserted in bad faith, because: (1) his "failure to disclose an IRA was not material in that the absence of the IRA did not significantly change [his] net worth and the assets he had available to make a settlement payment"; (2) "had the settlement been finalized, that would have required [him] to liquidate both IRAs to fully fund the anticipated settlement amount[,] thus exhausting [his] readily liquid[able] assets"; (3) "[his] failure to disclose was the result of a mistake and no reasonable person would construe the mistake [as] made in bad faith, especially given the fact that during the mediation [he] disclosed both of his IRAs"; (4) "[his] remaining assets are primarily in the form of retirement funds that are exempt from the execution of a judgment." (Id. at 53-54.)

In addition, Robert has asserted that F&W "acted as though it had a 'carte [blanche] veto' over the settlement discussions, and especially over the Government's consent to settle, which was not stated in the MOU and which contradicted the explicit terms of the MOU's 'good faith' provision." (Id. at 54.) He also asserts that "[t]he MOU called for [him] and the Government alone to negotiate a settlement[, but] F&W Lawn Care pretended that it was negotiating

- 4 -

the deal and that the Government's attorney was merely F&W's puppet because at any time F&W Lawn Care could, by denying its consent, veto the government's decision to settle." (Id.)

## II.

F&W moves for judgment on the pleadings under Rule 12(c) against Robert's Amended Counterclaim, which alleges that F&W breached the duty to participate in the mediation negotiations in good faith. A party may move for a judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted).

## III.

In its motion, F&W emphasizes the insufficiency of Robert's core allegations. In Robert's Mediation Submission, he represented to the mediator (Magistrate Judge Hawley) and to his mediation counterparties (the government and F&W) that he possessed a certain limited amount of assets, including just a single IRA. (Doc. #75, ¶ 14) (citing Doc. #65, ¶ 10). Based on that information, the government and F&W informed Judge Hawley that they would be willing to settle for a "certain stated amount"

- 5 -

if Robert provided "a sworn affidavit as to the total value of his assets." (Id. at ¶ 17) (citing Doc. #65, ¶ 10). But the Financial Affidavit that Robert provided revealed that he had "omitted an entire IRA (one of only two) from his Mediation Submission." (Id. at ¶ 19) (citing Doc. #65, ¶ 10). F&W withdrew its settlement offer and the global settlement failed. (Id. at ¶ 20) (citing Doc. #65, ¶ 10). F&W's withdrawal did not, however, prevent the government from settling with Robert for $150,000. (Id. at ¶¶ 21-23) (citing Doc. #65, pp. 54-55, ¶ 13).

In the Amended Counterclaim. Robert asserts that F&W breached a duty to "participat[e]" in the mediation in "good faith." (Doc. #65, p. 52-53.) He alleges that the breach occurred when F&W "withdrew" its agreement to settle for an amount that Robert offered. (Id. at 53.) And he makes that assertion despite conceding that his Financial Affidavit revealed that he had failed to truthfully and/or accurately disclose his available assets in his Mediation Submission (id.), a matter upon which F&W's offer was expressly conditioned, (id.)

The theory of Robert's Amended Counterclaim, if accepted, would eviscerate any meaningful possibility of mediation. No party would be allowed to refuse or withdraw a settlement offer — even an offer contingent on an unfulfilled condition precedent — without threat of a lawsuit. Nobody would ever be willing to mediate under that kind of risk.

- 6 -

Robert also asserts that F&W acted in bad faith by treating the government as its "puppet" and by acting as though it had a "carte [blanche] veto" over the government's ability to settle. (Doc. #65, p. 54.) F&W responds that it participated in the mediation as the "principal victim" of Tina's crimes and her fraudulent transfers to Robert. (Doc. #75, p. 7.) And that even if F&W agreed to the government serving as its intermediary — as a non-party to the underlying criminal case — F&W did not contract away its right to zealously advocate for its own interests. See In re Enck, No. 6:12-BK-16486-CCJ, 2014 WL 12668105, at *1 (Bankr. M.D. Fla. May 6, 2014) ("Good faith does not require [a defendant] to set aside its own business judgment and accept [a plaintiff]'s determination that an alternative [approach] 'would result in a WIN/WIN'"). F&W also notes that its withdrawal from the global settlement clearly did not prevent the government from settling with Robert for $150,000. (Doc. #75, ¶¶ 21-23.) Thus, even taken as true, these pleadings fall short of showing bad faith.

F&W also asserts that Robert's Amended Counterclaim is irredeemably flawed because, as a matter of law, he cannot present evidence to substantiate it.

Under Section 3 of the Alternative Dispute Resolution Act of 1998, PL 105-315, 112 Stat. 2993651 (Oct. 30, 1998) (enacted in 28 U.S.C. § 652), federal district courts are required to "provide litigants in all civil cases with at least one alternative dispute

resolution process, including, but not limited to, mediation, early neutral evaluation, minitrial, and arbitration." 28 U.S.C. § 652(a). Federal district courts are also required, "by local rule adopted under section 2071(a)," to "provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications." Id. at § 652(d).

Accordingly, the Local Rules of the Central District of Illinois provide that strict confidentiality applies to the "entire" mediation process:

> (7) Confidentiality. The entire mediation process is confidential. Neither the parties nor the mediator may disclose information regarding the process, including terms of settlement, to the court or to third persons unless all parties otherwise agree.

C.D. Ill. Loc. R. 16.4(7). The Middle District of Florida's Local Rules are comparably stringent, and state that "no party, lawyer, or other participant" is "bound by," "may record," or "may disclose . . . without the judge's approval":

> [A]ny event, including any statement confirming or denying a fact — except settlement — that occurs during the mediation.

M.D. Fla. Loc. R. 40.3(g).  Similar prohibitions apply under Federal Rule of Evidence 408, which governs compromise offers and negotiations, and which was incorporated into the MOU:

> **(a) Prohibited Uses**. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or

- 8 -

> to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

Robert responds that his Amended Counterclaim of bad-faith negotiation is allowed under an exception to the general rule of mediation confidentiality. F&W cites several authorities holding that mediation confidentiality is virtually absolute, and that courts have limited power to police "participation" in the mediation process.[2]

The types of conduct deemed to constitute bad-faith

---

[2] Procaps S.A. v. Patheon Inc., No. 12-24356-CIV, 2015 WL 3539737, at *7 (S.D. Fla. June 4, 2015) ("inquiring into good faith is inconsistent with the confidential nature of mediation") (collecting cases); In re A.T. Reynolds & Sons, Inc., 452 B.R. 374, 381–82 (S.D.N.Y. 2011) ("Most courts that have addressed allegations of insufficient 'participation' during mediation proceedings (i.e., the degree to which a party discusses the issues, listens to opposing viewpoints, analyzes its risk of liability, and generally participates in the 'process' of mediation) have declined to find a lack of good faith."); see id. at 382 n.2 ("'Participation' in this regard is distinct from such objective criteria as attendance, exchange of pre-mediation memoranda, and settlement authority, which several courts have found to be elements of good faith in court-ordered mediation.").

participation, allowing for judicial oversight and intervention, make up a very short list:  failure to attend in-person or through an authorized representative with adequate settlement authority, Freedom Scientific BLV Grp., LLC v. Orient Semiconductor Elec., Ltd., No. 8:13-cv-569-T, 2014 WL 201745 (M.D. Fla. Jan. 17, 2014); In re A.T., 452 B.R. at 382 n.2; failure to submit pre-mediation memoranda, Nick v. Morgan's Foods, Inc., 270 F.3d 590, 597 (8th Cir. 2001); Vay v. Huston, No. 14-769, 2015 WL 791430 (W.D. Pa. Feb.25, 2015); and possibly a few other narrow exceptions.  See also Professor John M. Lande, Using Dispute System Design Methods to Promote Good-Faith Participation in Court-Connected Mediation Programs, 50 UCLA L. REV. 69, 86 (2002) ("courts have limited their interpretation of good faith in mediation to attendance, submission of pre-mediation memoranda, and, in some cases, attendance of organizational representatives with adequate settlement authority"); Abrams-Jackson v. Avossa, 743 F. App'x 421, 423 (11th Cir. 2018) (affirming that plaintiff's argument that defendants failed to "participat[e]" in mediation in "[g]ood [f]aith" was properly rejected and that sanctions for violating the Local Rules by "attach[ing] the defendants' confidential mediation statement" were properly imposed).

Robert responds that those authorities are distinguishable, as none of them involved a "*contractual* good faith provision." (Doc. #81, pp. 14-18.)  That is so, but it is not a meaningful

distinction. The parties here agreed that their claims would be mediated "pursuant to Rule 16.4 of the [Central District of Illinois] Local Rules." (Doc. #25, p. 12.) They also agreed that Fed. R. Evid. 408 and Ill. R. Evid. 408 would "apply to this agreement, and to all acts, conduct or statements made during the settlement conference or during communications about settlement in anticipation of such conference." (Id.) Even assuming it is possible to contract around these confidentiality rules, Robert did not do so.[3] Robert also asserts that F&W has "waived reliance on the *MOU's* confidentiality provisions" (id. at 18-19) (emphasis added), but the pleadings establish otherwise. Finally, Robert contends that the "settlement communications are exempt" under Fed. R. Evid. 408(b) and Ill. R. Evid. 408(b) (id. at 19-21), but again the pleadings establish otherwise.[4]

Accordingly, it is now

**ORDERED:**

---

[3] The MOU is especially unhelpful to Robert, as its confidentiality provision is even broader than Rule 408: "The parties acknowledge and agree that no evidence [covered by Rule 408] will be admissible in any state or federal, judicial or administrative trial or hearing, including but not limited to, [the specific proscriptions of Rule 408, and subject to no exceptions]" (Id. at 12) (emphasis added).

[4] See Cento v. Allstate Prop. & Cas. Ins. Co., No. 4:12-CV-85 CAS, 2014 WL 7185679, at *1, *3 n.2 (E.D. Mo. Dec. 16, 2014) (denying defendant's motion predicated on an assertion that plaintiff and her counsel "were not negotiating in good faith and/or did not mediate in good faith" and concluding that none of the exceptions of Fed. R. Evid. 408(b) applied).

1. Plaintiff F & W Lawn Care and Landscaping, Inc.'s Motion for Judgment on the Pleadings (Doc. #75) is **GRANTED**.

2. The Clerk shall **WITHHOLD ENTRY OF JUDGMENT** in favor of Plaintiff F & W Lawn Care and Landscaping, Inc. on Defendant Robert A. Cozart's Amended Counterclaim (Doc. #65, pp. 51-56) pursuant to Fed. R. Civ. P. 54(b).

**DONE AND ORDERED** at Fort Myers, Florida, this  5th  day of May 2025.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record