UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

F & W LAWNCARE AND
LANDSCAPING, INC.

        Plaintiff,

v.                         Case No:  2:23-cv-549-JES-KRH

ROBERT A. COZART,

        Defendant.

_____

## <u>OPINION AND ORDER</u>

This matter comes before the Court on review of the [ ] Motion for Summary Judgment (Doc. #138) filed on January 21, 2026 by Defendant Robert A. Cozart ("Defendant" or "Robert").  Plaintiff F & W Lawn Care and Landscaping, Inc. ("Plaintiff" or "F & W") filed a Response in Opposition (Doc. #141) on February 7, 2026. Defendant filed a Reply in Support of His Motion for Summary Judgment (Doc. #144) on March 9, 2026.  For the reasons set forth below, Defendant's Motion is denied.

## I.

Summary judgment is appropriate only when a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when the evidence

is such that a reasonable trier of fact could return a verdict for the non-moving party.  McCreight v. AuburnBank, 117 F.4th 1322, 1329 (11th Cir. 2024).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

## II.

The Court previously summarized the background of this case as set forth in the Complaint:

> The events instigating this litigation began in 2008, when Defendant's then-wife Tina Cozart ("Tina") engaged in a scheme of fraudulently using Plaintiff's credit cards for her own personal gain while working as an office manager for Plaintiff (Doc. #1, ¶ 8). In August 2016, federal prosecutors in Illinois charged Tina with fraud and tax violations. Defendant was not charged. Then, in December 2017 Tina pleaded guilty and was sentenced to a term of imprisonment for a fraud charge and a tax charge. Tina was also ordered to pay Plaintiff over $1.4 million in restitution. (Id. at ¶¶ 30-39.)
>
> Sometime between late 2015 and early 2016, Tina and Defendant moved to California, where Defendant had secured employment. (Id. at ¶¶ 27-28.) Defendant filed a petition for divorce against Tina in 2018. (Id. at ¶ 47.) In late 2019, Tina and Defendant executed a marital settlement agreement ("MSA"). Pursuant to the MSA, Tina assigned her entire 50% interest in certain assets to

Defendant. (Id. at ¶¶ 58-60.) This allegation forms the basis for Plaintiff's claims against Defendant, who, according to Plaintiff, obtained a sham divorce from Tina to conceal Tina's assets by making Defendant the sole owner of the couple's community property.

Plaintiff also alleges that, in furtherance of the scheme to conceal Tina's assets, Defendant failed to segregate certain stock proceeds that were earned and substantially liquidated during the period between when Defendant filed the divorce petition through the date of the divorce judgment. (Id. at ¶¶ 80-83.) Moreover, Plaintiff asserts that Defendant intentionally omitted the account containing these stock proceeds from the MSA even though, under California law, Tina had a 50% interest in these assets. (Id. at ¶ 86.) Then, when Plaintiff requested that Tina pursue her share of the funds from the account containing the stock proceeds, Tina purportedly refused, amounting to an effective transfer of the stock assets to Defendant. (Id. at ¶¶ 93-98.)

The last allegation forming the basis of the scheme involved a series of payments made from Tina to Defendant after her release from incarceration. Plaintiff asserts that, because Tina was required to pay 50% of her disposable income to Plaintiff in restitution, Defendant and Tina devised a plan for Tina to pay the entirety of her excess income to Defendant for fabricated debts. (Id. at ¶¶ 100-103.)

Of note, during the pendency of Tina's criminal prosecution, Plaintiff filed a civil suit against Tina and Defendant in state court in McLean County, Illinois. (Id. at ¶ 32.) While Plaintiff obtained a judgment for $1.46 million against Tina in the civil suit, the Illinois court dismissed Plaintiff's fraudulent transfer claim against Defendant for lack of personal jurisdiction. (Id. at ¶¶ 104-117.) Thus, Plaintiff filed the instant case alleging that the MSA transfer, Defendant's liquidation of certain stock proceeds during the divorce period, Tina's release of certain stock proceeds to Defendant following the divorce, and post-divorce transfers made from Tina to Defendant were

actually and constructively fraudulent as to Plaintiff, and therefore voidable.

F & W Lawn Care & Landscaping, Inc. v. Cozart, 2025 WL 2423680, at *1-2 (M.D. Fla. Aug. 22, 2025) (internal footnotes omitted). Additionally, the Department of Justice brought an action against Defendant in November 2023 to enforce the criminal restitution award against Tina. (Doc. #141 at ¶ 12.) The action alleged that Defendant and Tina's 2019 MSA and 2020 divorce effectuated a fraudulent transfer from Tina to Defendant of the Identified Assets in the MSA. Defendant paid $150,000 to settle the action with the Government, of which the Treasury Department paid $146,989.72 to Plaintiff. (Id. at ¶¶ 13-14.)

On July 24, 2023, Plaintiff filed the instant federal action against Defendant asserting in four counts that various fraudulent transfers were made to conceal Tina's assets by making Defendant the sole owner of the assets. (Doc. #1.) Federal jurisdiction is premised on diversity of citizenship pursuant to 29 U.S.C. § 1332(a). As Defendant notes, the material facts have not changed since service of the Complaint. (Doc. #138 at p. 6.)

**III.**

Defendant seeks summary judgment on each of Plaintiff's fraudulent transfer claims. The primary thrust of the motion is that Plaintiff "cannot prove damages of greater than $75,000

-4-

neither for any one count nor for all counts combined." (Doc. #138 at pp. 1-2.) Specifically, Defendant asserts that: (1) Plaintiff cannot prove damages greater than $75,000 to satisfy the amount in controversy requirement for the Court to exercise diversity jurisdiction; (2) to the extent Plaintiff is able to satisfy the jurisdictional threshold, Defendant is entitled to an $150,000 offset credit based on his payment to the Government to settle its case against him; and (3) because the MSA reflected a "long-standing, non-collusive agreement, in which [Defendant and Tina] mutually and verbally agreed to make no claim against each other's property in a divorce[,]" the retirement funds, car, life insurance policy, and stock earnings at issue in this case were Defendant's sole property to which neither Tina (nor her creditors) had any claim, and the transfers were not "actionable transfer[s]". (Id. at pp. 2-5.)

Defendant first asserts that because Plaintiff cannot prove damages in excess of $75,000 "from the start," the district court never had subject matter jurisdiction and the case should be dismissed. Alternatively, Defendant asserts Plaintiff can prove no damages, so the court should dismiss the Complaint with prejudice. (Id. at p. 6.)

The Court will begin by addressing subject matter jurisdiction.

-5-

**A. Subject Matter Jurisdiction Principles**

"For diversity jurisdiction, the citizenship of all parties must be completely diverse, and the amount in controversy must exceed $75,000." ECB USA, Inc. v. Chubb Ins. Co. of New Jersey, 113 F.4th 1312, 1318 (11th Cir. 2024).  "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2011).  A "plaintiff's good-faith pleading will be second guessed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Fastcase, Inc. v. Lawriter, LLC, 907 F.3d 1335, 1342 (11th Cir. 2011) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).  This standard gives "great weight to [the] plaintiff's assessment of the value of [his] case." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1314 (11th Cir. 2002) (quoting Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994)).  Legal certainty, or the lack thereof, is determined as of the time the action is filed. See Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570 (2004)("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought," not later events); Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) ("A court's analysis of the amount-in-controversy

requirement focuses on how much is in controversy at the time of [filing or] removal, not later.").

A legal certainty can be established by showing that as a matter of law the jurisdictional amount is not recoverable, or by showing that as a matter of fact the record fails to establish a sufficient amount of damages. Barry v. Edmunds, 116 U.S. 550, 559 (1886). In this regard, "[s]tate law is relevant to th[e] determination [of the amount in controversy] insofar as it defines the nature and extent of the right plaintiff seeks to enforce." Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1012 (5th Cir. 1979) (internal quotations and citation omitted). Additionally, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010). "A district court evaluating a factual attack on subject matter jurisdiction 'may proceed as it never could' at summary judgment and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2021) (citing Lawrence, 919 F.2d at 1529).

A motion challenging the existence of subject-matter jurisdiction is construed under Rule 12(b)(1) because the Court is without power to enter judgment. See Hakki v. Sec'y, Dep't of

-7-

Veterans Affairs, 7 F.4th 1012, 1023 (11th Cir. 2021) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-30 (11th Cir. 1990); Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33 (11th Cir. 2008)). Dismissal is appropriate pursuant to Rule 12(b)(1), instead of the entry of judgment pursuant to Rule 56(a). Id. at 1022-1023. When a case falls outside the district court's jurisdiction, "it has no power to enter a judgment on the merits and must dismiss the action." Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1240 (11th Cir. 2003) (quotation marks omitted). Since a "dismissal for lack of subject matter jurisdiction is not a judgment on the merits" it should be "entered without prejudice." Lavina v. Florida Prepaid Coll. Bd., ___ F.4th ___, 2026 WL 1078081, at *4 (11th Cir. Apr. 21, 2026) (quoting Stalley, 524 F.3d at 1232).

## B.  Application of Jurisdiction Principles

Defendant argues that the jurisdictional amount was, and is, lacking because Plaintiff's fraudulent transfer claims involve mostly exempt property which, as a matter of law, cannot be fraudulently transferred. (Doc. #138 at pp. 10-19, 20-29.) As a result, total damage amounts are either nonexistent or below $75,0000, "and consequently the district court lacks subject matter jurisdiction over this case." (Id. at p. 19.)

Plaintiff's Complaint expressly alleged that "the amount in controversy is in excess of $75,000" (Doc. #1 at ¶ 3), then asserted various causes of action and claimed damages that, in the aggregate, were greater than $75,000. "That was all the plaintiffs were required to do to satisfy the jurisdictional minimum." Giovanno v. Fabec, 804 F.3d 1361, 1365 (11th Cir. 2015). The amount in controversy requirement has been satisfied in this case, and Defendant has not shown otherwise to a legal certainty.

The facts show that Tina transferred, among other things, her interest in two retirement accounts worth roughly $1.3 million dollars (Doc. #138 at ¶¶ 35, 43), stock options worth $228,884.53 (id. at ¶ 44), and at least $21,705 in other miscellaneous payments (id. at ¶ 37). The issues of whether those transfers constituted fraudulent transfers of assets, as defined in the California Uniform Voidable Transactions Act ("UVTA") (see Cal. Civ. Code § 3439 et seq.) cannot be resolved by undisputed material facts on this record. While many of the basic facts are not disputed, there are material factual disputes which preclude summary judgment.

While it is certainly possible that Plaintiff may recover less than the jurisdictional amount, that would not divest the court of jurisdiction. Once that allegation is properly made and the federal court is satisfied of its jurisdiction, the court's power is not conditioned "on a later award of at least that amount"

nor is jurisdiction ousted by "the inability of a plaintiff to recover [the jurisdicitonal amount]." <u>Adolph Coors Co. v. Movement Against Racism & the Klan</u>, 777 F.2d 1538, 1544 (11th Cir. 1985)(citing <u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-89 (1938)).  The diversity jurisdiction statute provides the appropriate consequence of proving an amount less than the jurisdictional threshold: "the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff."  28 U.S.C. § 1332(b).

**C. Defendant's Remaining Summary Judgment Arguments**

**(1) The $150,000 Settlement**

Defendant also asks the Court to determine that he is entitled to an offset credit of $150,000 based on a settlement payment Defendant made to the Federal Government in exchange for the Government's release of its claims against him as part of Tina's criminal case.  (Doc. #138 at pp. 27-28.)  According to Defendant, the Government used those funds to pay restitution to Plaintiff for the same harms alleged in the instant action, accordingly, Plaintiff is only entitled to any damages above that amount to avoid double-recovery.  (<u>Id.</u>)  Plaintiff responds that any settlement that Robert paid the Government arises from distinct facts and distinct harms, and cannot serve as an offset credit against any damages in the instant suit. (Doc. #141 at pp. 22-23.)

The Court finds that disputed material facts preclude summary judgment as to the $150,000 set-off.

### (2) Robert and Tina's Oral Agreement

Defendant asserts that summary judgment should be granted in his favor because he accepted any transfer of assets by Tina in good faith and for adequate consideration pursuant to the oral MSA.  (Doc. #138 at pp. 25-26.)  Moreover, according to Defendant "[t]he facts are indisputable that Robert and Tina Cozart agreed long ago 'that if [their] marriage were to end in divorce, neither [Robert nor Tina] would seek to recover property owned by the other spouse" and that it is indisputable that these "mutual promises" constitute adequate consideration.  (Id. at p. 26.)

Plaintiff responds that the existence of a premarital oral agreement, "for which the only evidence is the self-serving statements of [Defendant and Tina] themselves[,]" at best presents a factual issue for a jury.  (Doc. #141 at pp. 26-27.)  The Court agrees with Plaintiff that this record is insufficient to compel summary judgment in Defendant's favor on the basis of a purported oral pre-nuptial agreement.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those

of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #138) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___27th___ day of May 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-12-