UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

F & W LAWNCARE AND LANDSCAPING, INC.

Plaintiff,

v. Case No: 2:23-cv-549-KCD-KRH

ROBERT A. COZART,

Defendant.

---

**ORDER**

For years, Tina Cozart systematically stole from Plaintiff F & W Lawncare and Landscaping, Inc. to bankroll her lifestyle. After learning that Tina was rendered judgment-proof by her subsequent divorce settlement, Plaintiff sued her ex-husband, Defendant Robert Cozart, to recover the lost funds. Defendant now seeks reconsideration of the Court's order denying his summary judgment motion. (*See* Doc. 151.)

**I. Background**

From 2008 to 2015, Tina fraudulently used Plaintiff's credit cards while working as an office manager for its lawn care business. (Doc. 141 at ¶¶ 6-9.) In 2017, Tina pled guilty to two Federal charges, was sentenced to prison, and

ordered to pay restitution. Plaintiff filed a civil suit against Tina and obtained a judgment for $1.46 million in state court. (*Id.* ¶ 17.)

Meanwhile, in September 2019, Tina and Defendant executed a marital settlement agreement ("MSA"). (*Id.* ¶ 25.) Pursuant to the MSA, Tina assigned her entire 50% interest in certain "Identified Assets" to Defendant, including, but not limited to, "all furniture, furnishings, jewelry and other items; a 2010 Jeep Wrangler; a State Farm life insurance policy account ending 743S; a Charles Schwab IRA account ending x9883; and a Tesla 401(k)." (*Id.* ¶ 26.) After Tina finished her term of incarceration, she moved in with Defendant and made certain transfers of her excess income to Defendant. (*Id.*)

In 2023, Plaintiff brought this case against Defendant, who, according to Plaintiff, obtained a sham divorce from Tina to conceal certain assets, failed to segregate certain stock proceeds, and devised a plan for Tina to pay the entirety of her excess income to Defendant for fabricated debts after her term of incarceration. (Doc. 1 ¶¶ 80-103.) The Court recently denied Defendant's motion for summary judgment. He now seeks reconsideration. (Doc. 152.)

## II. Legal Standard

District courts have inherent authority to reconsider their non-final orders. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379-81 (11th Cir. 2024). But this discretion should be exercised only in

extraordinary circumstances. "For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions. There is a badge of dependability necessary to advance the case to the next stage." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 1369.

Accordingly, a motion for reconsideration should be granted only when there is: (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) a need to correct clear errors of fact or law or prevent manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "[A] party may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Hays v. Page Perry, LLC*, 92 F. Supp. 3d 1315, 1319 (N.D. Ga. 2015).

## III. Discussion

Defendant offered a straightforward argument on summary judgment challenging this Court's jurisdiction. He argued that the bulk of the assets Tina transferred to him—namely, her share of the retirement accounts and stock proceeds—were exempt from creditors under California law. If those assets

were exempt, the logic went, they could not be the subject of a fraudulent transfer claim. And without those assets in the mix, Plaintiff's provable damages would fall well below the $75,000 jurisdictional threshold. (*See* Doc. 138.)

The Court rejected that argument because the record contained genuine disputes of material fact as to whether those assets actually qualified for the claimed exemptions. Defendant now seeks a do-over. He insists that the underlying facts are completely undisputed, and the Court committed a manifest error by failing to rule on the applicability of his exemption defenses. (*See* Doc. 152.)

Defendant has a procedural problem off the block. He styles his motion under Federal Rule of Civil Procedure 59(e). But Rule 59(e) triggers only after a court enters a final judgment. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). A denial of summary judgment is not that.

What is more, "[i]t is hornbook law that the amount in controversy requirement is met by a bona fide allegation of damages in excess of [$75,000,]" *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985), and once that allegation is properly made and the federal court is satisfied of jurisdiction, its power is not conditioned "on a later award

of at least that amount." *Id.* But even setting those issues aside, Defendant's motion still fails on the merits.

Defendant's argument runs into a basic math problem. He does not deny that at least some of the transferred assets fall outside any claimed exemption. By his own calculation, those non-exempt transfers total roughly $55,000.[1] Nor does he contest the remaining elements of Plaintiff's fraudulent transfer claims. That significantly narrows the playing field. To defeat federal diversity jurisdiction, it must appear to a legal certainty that the case is for less than the jurisdictional amount. *Id.*; *see also* 28 U.S.C. § 1332(a). With nearly $55,000 already conceded, the Court need only find a genuine factual dispute over a fraction of the remaining assets—just over $20,000—to cross the jurisdictional threshold.

That brings us to the retirement accounts—the Schwab IRA and Tesla 401K. Defendant insists these funds are completely shielded from creditors. But that sweeping claim outruns the record. Under Plaintiff's facts (and the parties' divorce agreement), Tina was entitled to claim half those accounts during the divorce. Yet she transferred her entire share to Defendant without

[1] Count I: roughly $12,500 in non-exempt value from the Jeep Wrangler and the State Farm life insurance policy. (Doc. 152 at 3.) Counts II & III: $20,599 from the non-exempt portion of the Tesla RSUs. (*Id.* at 7.) Count IV: $21,705 in post-divorce transfers (rent and utility payments), for which Defendant did not assert an exemption defense. (Doc. 138 at 3.)

any real return. Defendant tries to wave all this away by asserting that such assets, as retirement accounts, are categorically exempt. California law, however, demands more than just a label. A retirement account "not used and designed for retirement purposes is not a retirement plan entitled to the benefit of the statutory exemption." *Yaesu Elecs. Corp. v. Tamura*, 28 Cal. App. 4th 8, 14 (1994).

Giving away a six-figure asset to an ex-spouse is decidedly not a retirement purpose. "In the instant case, a reasonable inference can be made . . . [that] the [retirement] plan[s] w[ere] not used for a retirement purpose. Rather, [Tina and Defendant] used the pension plan to secret and shield community property assets by funneling them through the plan." *In re Marriage of LaMoure*, 221 Cal. App. 4th 1463, 1478 (2013). And if Tina's half of those accounts—valued collectively at roughly $1.3 million—are non-exempt because of the transfer, Plaintiff's provable damages sail well past the jurisdictional mark.

Defendant makes one final request. He asks the Court to go down his list of assets and declare exactly which are exempt and cap Plaintiff's potential recovery. (Doc. 152 at 13.) But the summary judgment motion was a targeted attack on the $75,000 jurisdictional threshold. Once the Court found that genuine factual disputes kept the amount in controversy above that line, the

inquiry was over. The precise scope and applicability of any remaining exemptions can be hashed out where they belong: in motions in limine and jury instructions. To the extent Defendant is not satisfied with the Court's evaluation of the facts, he is welcome to present his case to the jury at trial. Having found no reason to employ the extraordinary remedy of reconsideration, Defendant's motion (Doc. 152) is **DENIED**.

**ORDERED** in Fort Myers, Florida on August 17, 2026.

Kyle C. Dudek
United States District Judge